```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
                        LAREDO DIVISION


UNITED STATES OF AMERICA         §
                                 §
vs.                              §   Criminal Action No. L-10-902
                                 §
CARLOS MANUEL MENDEZ-ARREDONDO   §
```

## MEMORANDUM AND ORDER

Pending is Defendant's motion to suppress evidence allegedly acquired in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments. (Dkt. 33.)

## FACTUAL BACKGROUND

The relevant facts are largely uncontested. On April 13, 2010, a federal grand jury indicted Defendant on multiple drug trafficking charges and a bench warrant was issued for his arrest.[1] (Dkt. Nos. 1, 5.) On April 23, 2010, Defendant attempted to enter the United States via the pedestrian lane of the World Trade Bridge. (Dkt. 38, at 2.) A Customs and Border Patrol ("CBP") agent swiped Defendant's visa through the Treasury Enforcement and Communication System and, because of the pending warrant, was alerted that Defendant was to be detained for the

---

[1] Specifically, Defendant was indicted for conspiracy to possess with intent to distribute, and possession with intent to distribute, a quantity in excess of 5 kilograms of cocaine. (Dkt. 1.)

1

Drug Enforcement Agency ("DEA"). (Id. at 1-2) CBP officers detained Defendant and transferred him to a secondary processing area where he was presented to CBP Officer Ricardo Martinez. (Id.)

At approximately 3:20 p.m.,[2] Officer Martinez began processing Defendant for a Department of Homeland Security Notice to Appear ("NTA").[3] (Id. at 4.) Officer Martinez began the NTA processing by advising Defendant of his rights. (Id. at 4.) To do this he used two forms, an I-214 Warning as to Rights ("I-214"), and an I-867 Record of Sworn Statement ("I-867"). (Id. Attach. B, Attach. C.) Officer Martinez first read the I-214 to Defendant, informing him that, inter alia, he had the right to remain silent, the right to speak to an attorney and to have an attorney present during questioning, and that anything he said could be used against him "in a Court of law or in any administrative or immigration proceeding." (Id. at 4, Attach B.)

Officer Martinez then read the I-867. The I-867 informed Defendant of Officer Martinez's position and authority, and the general purpose of the questioning. (Id. at 4, Attach. C.)

---

[2] Defendant was initially detained at approximately 1:30 p.m. (Dkt. 38, at 2.)

[3] In its response to Defendant's motion to suppress, the Government states that "[t]he Notice to Appear informs the alien of the reasons for arrest, the right to representation by counsel at no cost to the government, and the time and location of a removal proceeding." (Id. at 3 n.3.)

Officer Martinez asked the three questions at the bottom of the first page of the I-867 and recorded Defendant's answers:

> Q. Do you understand what I've said to you?
> A. Yes.
>
> Q. Do you have any questions?
> A. No.
>
> Q. Are you willing to answer my questions at this time?
> A. No. I request an attorney to be present.

(Id. Attach. C.) With the exception of four "credible fear" questions, Officer Martinez ceased his interrogation after Defendant requested an attorney.[4] (Id. at 5.)

At approximately 7:50 p.m., DEA Special Agent John Leonard and DEA Task Force Officer ("TFO") José Arreola arrived at the secondary processing area. (Id.) They found officer Martinez and saw Defendant sitting nearby in handcuffs. (Id.) Officer Martinez testified that Agent Leonard asked if there was an empty room he and TFO Arreola could use to speak to Defendant. Officer Martinez informed Agent Leonard that there was an available room, and also that he had read Defendant his rights and that Defendant had requested an attorney. Agent Leonard and TFO Arreola took Defendant into the room and conducted a roughly hour-long interrogation during which Defendant made

---

[4] Generally, the credible fear questions asked why Defendant left his home country or country of last residence, whether he would be harmed upon return, and whether he had anything else to add. (See id. Attach. C.)

incriminating statements about the pending drug trafficking charges. (Id. at 6.)

The undisputed evidence at the hearing was that, at the beginning of this second interrogation, TFO Arreola reread Defendant his Miranda rights and Defendant did not invoke any of those rights. At no point before or during the second interrogation was Defendant provided a lawyer.

## DISCUSSION

Defendant argues that his Fifth Amendment right to counsel was violated when Agent Leonard and TFO Arreola conducted a second interrogation after he requested an attorney during the interrogation with Officer Martinez.[5] (Dkt. 33.) The Government

---

[5] The Government asserts that Defendant's Sixth Amendment right to counsel had not attached because he "had not yet been presented for his initial appearance." (Id. at 11.) The Court disagrees. With respect to the drug trafficking charges, Defendant's Sixth Amendment right to counsel attached when he was indicted on April 13, 2010. See Rothgery v. Gillespie Cnty., 128 S. Ct. 2578, 2583 (2008) (noting that the Sixth Amendment right to counsel attaches when a criminal prosecution is commenced, and that the Court has "pegged commencement to 'the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" (emphasis added)(quoting United States v. Gouveia, 467 U.S. 180, 188 (1984)); see also United States v. Boskic, 545 F.3d 69, 82 (1st Cir. 2008), cert. denied, 129 S. Ct. 1393 (2009) ("It is equally well settled that the Sixth Amendment right [to counsel] may attach before a defendant first faces a judicial officer. The [Supreme] Court repeatedly has included the return of an indictment or the filing of an information among the circumstances that constitute the 'initiation of adversary judicial proceedings'—events that do not involve the defendant's appearance before a judicial officer . . . ."). Regardless, Defendant had a Fifth Amendment

argues that Defendant's request for an attorney was a limited invocation of his right to counsel, which applied to the NTA processing, but not to the later questioning about the drug trafficking charges. (Dkt. 38, at 8-9.)

The Supreme Court has repeatedly held that when a defendant in custody invokes his right to counsel, interrogation must cease until counsel has been made available, unless the defendant himself initiates further communication. Edwards v. Arizona, 451 U.S. 477, 484-85 (1981) ("[I]t is inconsistent with Miranda and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel."); see also Montejo v. Louisiana, 129 S. Ct. 2079, 2089-90 (2009); Minnick v. Mississippi, 498 U.S. 146, 152-53 (1990). However, as the Government points out, in Connecticut v. Barrett, 479 U.S. 523 (1987), the Court held that questioning may continue if a defendant makes only a limited request for counsel and that limited request is honored by the police.

In Barrett, the defendant was taken to the police station and questioned about his involvement in a sexual assault. Id. at 525. When advised of his rights, the defendant stated that he "would not give a written statement unless his attorney was

---

right to counsel in both interrogations. Miranda v. Arizona, 384 U.S. 436, 478-79 (1966). The Fifth Amendment framework is sufficient to decide the issue before the Court.

5

present but had 'no problem' talking about the incident." Id. The questioning proceeded and the defendant made incriminating oral statements that were used against him at trial. Id. at 526. The Connecticut Supreme Court overturned the conviction, holding that defendant's "desire for counsel before making a written statement served as an invocation of the right for all purposes." Id. The Supreme Court reversed:

> [W]e know of no constitutional objective that would be served by suppression in this case. It is undisputed that [defendant] desired the presence of counsel before making a written statement. Had the police obtained such a statement without meeting the waiver standards of Edwards, it would clearly be inadmissible. [Defendant's] limited requests for counsel, however, were accompanied by affirmative announcements of his willingness to speak with the authorities. The fact that officials took the opportunity provided by [defendant] to obtain an oral confession is quite consistent with the Fifth Amendment. Miranda gives the defendant a right to choose between speech and silence, and [defendant] chose to speak.

Id. at 529.

The Fifth Circuit addressed a similar fact pattern in United States v. Ivy, 929 F.2d 147 (5th Cir. 1991). In that case, the defendant waived his Miranda rights and agreed to speak with the police. Id. at 152. During the interview, the officer asked the defendant where he acquired dynamite. Id. The defendant responded, "let me talk to my lawyer before I answer that." Id. The officer immediately changed the subject and

6

continued with the interview. Id. Citing Barrett, the court upheld the district court's ruling that the defendant's right to counsel was not violated. Id. at 153. His request for an attorney was expressly limited to the question about dynamite and was honored by the officer conducting the interview. Id.

There are significant differences between the facts in this case and the facts in Barrett and Ivy. In those cases, the defendants willingly spoke to the authorities and expressly qualified their own requests for counsel. In this case, however, Defendant never indicated a willingness to speak with Officer Martinez and his request for counsel was completely unqualified. Indeed, when asked if he was willing to answer Officer Martinez's questions, Defendant unequivocally responded "No. I request an attorney to be present." (Dkt. 38, Attach. C.) The Government acknowledges these distinctions but argues that the Court's reasoning in Barrett holds up "because the purpose of the administration of rights in the first place was administrative and non-criminal in nature and, thus, was made for a limited purpose." (Id. at 9.) There are two problems with this assertion.

First, the notion that the context or purpose of the interrogation can limit an unqualified invocation of the right to counsel is inconsistent with the Supreme Court's holding in Arizona v. Roberson, 486 U.S. 675 (1988). In Roberson, the

7

defendant was arrested as a suspect in a burglary. Id. at 678. He was advised of his rights and requested an attorney. Id. Three days after defendant's arrest, while he was still in custody and before an attorney was provided, a different police officer questioned him about a different crime. Id. That officer, unaware that the defendant had requested an attorney during an earlier interrogation, reread the defendant his rights and obtained an incriminating statement. Id.

The Supreme Court held that the defendant's right to counsel was violated when he was questioned about the second crime. Id. at 679. The defendant's request for an attorney during the initial interrogation applied equally to the subsequent interrogation, despite that they were for entirely separate purposes. As the Court explained, "the presumption raised by a suspect's request for counsel—that he considers himself unable to deal with the pressures of custodial interrogation without legal assistance—does not disappear simply because the police have approached the suspect, still in custody, still without counsel, about a separate investigation." Id. at 683. Thus, the purpose or context of a custodial interrogation has no bearing on the scope of a defendant's invocation of his right to counsel.

Second, the Government repeatedly asserts that the NTA questioning was "administrative," "non-criminal," and

8

"completely separate" from the interrogation by Agent Leonard and TFO Arreola. (Dkt. 38, at 11.) Even if this distinction was legally relevant—and Roberson suggests that it is not—it is simply not supported by the facts in this case.[6] Indeed, Officer Martinez candidly testified that he told Defendant he was wanted by the DEA on drug charges and that he would have asked questions about those charges had Defendant not invoked his right to counsel. He also testified that he would have passed Defendant's statements about the drug charges along to Agent Leonard.

The evidence also revealed that Defendant, although a Mexican citizen, had valid papers to enter this country. Specifically, he possessed a DSP-150 "stand alone" visa. (Id. at 2.) Yet, on the form labeled "Determination of Inadmissibility" (Dkt. 41, Attach. E), Officer Martinez wrote: "You [(the defendant)] failed to comply with your inspection by refusing to answer questions to determine your admissibility." When asked the meaning of this statement, Martinez explained, again quite

---

[6] The Court is aware that a statement by an alien who has not received Miranda warnings is generally admissible in a deportation proceeding. See Bustos-Torres v. INS, 898 F.2d 1053, 1056–57 (5th Cir. 1990) (citing Trias-Hernandez v. INS, 528 F.2d 366, 368 (9th Cir. 1975)) ("Miranda warnings are not required in the deportation context, for deportation proceedings are civil, not criminal in nature, and the Sixth Amendment safeguards are not applicable.")  Here, however, the Government seeks to use Defendant's statements as evidence against Defendant in a criminal drug trafficking case.

candidly, that he was referring to Defendant's refusal to discuss the details of his pending drug trafficking case.

Furthermore, the I-214 and I-867 specifically informed Defendant that he could be subject to criminal penalties if he lied or gave misinformation and that anything he said could be used against him in a "Court of law." (Id. Attach. B., Attach. C.) Defendant had good reason to believe that the NTA interrogation was criminal in nature, and it is Defendant's state of mind that controls this analysis. Roberson, 486 U.S. at 687 ("Edwards focuses on the state of mind of the suspect and not of the police.").

## CONCLUSION

When Defendant requested an attorney, all interrogation was required to cease until either an attorney was made available, the Defendant himself reinitiated communication, or there was a fourteen day break in Defendant's custody. See Maryland v. Shatzer, 130 S. Ct. 1213, 1219–23 (2010) (establishing the fourteen day break-in-custody rule). By reinterrogating Defendant before any of these events occurred, Agent Leonard and TFO Arreola violated Defendant's Fifth Amendment right to counsel. As a result, Defendant's motion to suppress (Dkt. 33) the incriminating statements made during the subsequent interrogation is GRANTED.

DONE at Laredo, Texas, this 21st day of September, 2010.

10

_____
**George P. Kazen**
**Senior United States District Judge**